UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZEST ANCHORS, LLC d/b/a Zest DentalSolutions and ZEST IP HOLDINGS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>GERYON VENTURES, LLC d/b/a DESS-USA and TERRATS MEDICAL SOCIEDAD LIMITADA,<br><br>Defendants,<br><br>BIOMET 3I, LLC d/b/a ZimVie,<br><br>Intervenor-Defendant.<br><br>GERYON VENTURES, LLC d/b/a DESS-USA; TERRATS MEDICAL SOCIEDAD LIMITADA; and BIOMET 3I, LLC d/b/a ZimVie,<br><br>Counterclaimants,<br><br>v.<br><br>ZEST ANCHORS, LLC d/b/a Zest DentalSolutions and ZEST IP HOLDINGS, LLC<br><br>Counterdefendants. | Case No.: 22-CV-230 TWR (NLS)<br><br>**ORDER (1) DENYING AS MOOT PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS, (2) GRANTING PLAINTIFFS' MOTION FOR CIVIL CONTEMPT, AND (3) DENYING WITH PREJUDICE DEFENDANTS' SUPPLEMENTAL REQUEST FOR BOND**<br><br>(ECF Nos. 61, 89) |

Presently before the Court are the Motions for Civil Contempt ("Contempt Mot.," ECF No. 61) and to Strike and Dismiss ZimVie Inc.'s Counterclaims ("MTD," ECF No. 92) filed by Plaintiffs and Counter-Defendants Zest Anchors, LLC, doing business as Zest Dental Solutions, and Zest IP Holdings, LLC, as well as the Supplemental Brief Requesting Bond ("Bond Mot.," ECF Nos. 89 (public), 91 (sealed)) filed by Defendants and Counterclaimants Geryon Ventures, LLC, doing business as DESS-USA, and Terrats Medical Sociedad Limitada. Because Intervenor-Defendant and Counterclaimant Biomet 3i, LLC, doing business as ZimVie ("ZimVie"), subsequently filed a First Amended Answer, Affirmative Defenses, and Counterclaims, (*see* ECF No. 106), the Court **DENIES AS MOOT** Plaintiffs' Motion to Dismiss. The remaining Motions are fully briefed, (*see* ECF Nos. 87 ("DESS Contempt Opp'n"), 88 ("ZimVie Contempt Opp'n"[1]), 100 ("Contempt Reply"), 101 ("Bond Opp'n"), 105 ("Bond Reply")), and the Court determines that they are appropriate for determination on the papers without oral argument pursuant to Civil Local Rule 7.1(d)(1). Having carefully considered the Parties' arguments, the record, and the relevant law, the Court **GRANTS** the Contempt Motion and **DENIES WITH PREJUDICE** the Bond Motion.

## PLAINTIFFS' CONTEMPT MOTION

Underlying Plaintiffs' Contempt Motion is the Court's July 18, 2022 Order Granting in Part and Denying in Part Plaintiffs' Motion for Preliminary Injunction ("Prelim. Inj.," ECF No. 49),[2] in which the Court

> **ENJOIN[ED] AND RESTRAIN[ED]** until the entry of final judgment in this action Defendants Geryon Ventures, LLC d/b/a DESS-USA, and Terrats

---

[1] On September 23, 2022, the Court granted ZimVie's unopposed motion to intervene. (*See* ECF No. 80.) Although ZimVie filed an opposition to Plaintiffs' Contempt Motion, (*see* ECF No. 88), Plaintiffs have clarified that they are not seeking to hold ZimVie in contempt. (*See* ZimVie Contempt Opp'n at 2; Contempt Reply at 7 n.3.)

[2] The Preliminary Injunction contains a thorough recitation of the facts and procedural background underlying that Order. (*See id.* at 2–15.) The Court assumes that those reading this Order are familiar with those facts for purposes of this Order.

>Medical Sociedad Limitada, together with their agents, employees, representatives, and all persons and entities in concert or participation with them from engaging in, committing or performing, directly or indirectly, any and all of the following acts:
>
>   1. Using in any way, including in connection with the promotion, marketing, advertising, and sale of products or services, Zest's LOCATOR® product suite trade dress or any trade dress that is a colorable imitation thereof, or confusingly similar thereto; and
>
>   2. Importing into the United States any products that use the LOCATOR® product suite trade dress or trade dress that is a colorable imitation thereof, or confusingly similar thereto.

(*See id.* at 45 (emphasis in original).)  The briefing on Plaintiffs' Contempt Motion highlights the Parties' divergent opinions on the scope of the Preliminary Injunction. (*Compare* Contempt Mot.; *and* Contempt Reply, *with* Contempt Opp'n.)  Specifically, it is undisputed that while Defendants have ceased selling their DESSLoc® products in the United States, (*see, e.g.*, DESS Contempt Opp'n at 3; *see also* ECF No. 65-1 ("Terrats Decl.") ¶ 4), they have continued to sell the abutments and retention inserts as separate components to distributors and customers outside the United States, including ZimVie. (*See, e.g.*, DESS Contempt Opp'n at 3; *see also* Terrats Decl. ¶¶ 5, 8.)  Plaintiffs contend that these actions violate the Preliminary Injunction, (*see generally* Contempt Mot., Contempt Reply), while Defendants believe that they are abiding by the Preliminary Injunction and that this Court lacks jurisdiction to enjoin extraterritorial conduct. (*See* DESS Contempt Opp'n at 7–11.)

The Court agrees with Plaintiffs that Defendants' reading of the Preliminary Injunction and continued sales of their DESSLoc® products constitutes an impermissible end-run around the Preliminary Injunction because even though Defendants sell non-infringing, individual components to foreign distributors, they know that these parts will be combined into an infringing whole for sale to customers in the United States who may be confused by the similarity of Defendants' DESSLoc® product suite to Plaintiffs' LOCATOR® product suite.  The Court also concludes that the Ninth Circuit's *Timberlane*

test weighs in favor of extraterritorial application of the Lanham Act here.[3]  *See, e.g.*, *Trader Joe's*, 835 F.3d at 969 (concluding that Lanham Act applied extraterritorially where

---

[3] The *Timberlane* test, first adopted by the Ninth Circuit in *Timberlane Lumber Co. v. Bank of Am., N.T. & S.A.*, 549 F.2d 597, 613 (9th Cir. 1976), provides that the Lanham Act applies extraterritorially if:

> (1) the alleged violations . . . create some effect on American foreign commerce; (2) the effect [is] sufficiently great to present a cognizable injury to the plaintiffs under the Lanham Act; and (3) the interests of and links to American foreign commerce [are] sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial authority.

*Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 969 (9th Cir. 2016) (quoting *Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601, 613 (9th Cir. 2010).  "Plaintiffs usually satisfy *Timberlane*'s first and second prongs by alleging that infringing goods, though sold initially in a foreign country, flowed into American domestic markets." *Id.* at 969-70 (first citing *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 556 (9th Cir. 1992); then citing *McBee v. Delica Co.*, 417 F.3d 107, 125 (1st Cir. 2005)).  Such is the case here, where Defendants—themselves foreign entities—sell their infringing products to foreign distributors such as ZimVie, who then resell the infringing products within the United States.

> The third *Timberlane* prong considers international comity, and . . . involves weighing seven factors:
>
> > [1] the degree of conflict with foreign law or policy, [2] the nationality or allegiance of the parties and the locations or principal places of business of corporations, [3] the extent to which enforcement by either state can be expected to achieve compliance, [4] the relative significance of effects on the United States as compared with those elsewhere, [5] the extent to which there is explicit purpose to harm or affect American commerce, [6] the foreseeability of such effect, and [7] the relative importance to the violations charged of conduct within the United States as compared with conduct abroad.

*Id.* at 972–73 (first citing *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 797–98 & n.24 (1993); then quoting *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 769 F.2d 1393, 1395 (9th Cir. 1985)).

Here, all but the second subfactor weigh in favor of extraterritorial application of the Lanham Act.  First, "[c]ourts typically find a conflict with foreign law or policy when there is an ongoing trademark dispute or other proceeding abroad," *see id.* at 973 (citing *Star-Kist*, 769 F.2d at 1396), but there is no evidence of any such proceedings here.  The second "factor typically weighs in favor of extraterritoriality when both parties are United States citizens, or the parties are foreign citizens who operate domestic businesses," *see id.* (citing *Reebok*, 970 F.2d at 556; *Ocean Garden, Inc. v. Marktrade Co.*, 953 F.2d 500, 504 (9th Cir. 1991)), but neither is the case here.  *See, e.g.*, *Sound N Light Animatronics Co. v. Cloud B, Inc.*, No. CV1605271BROJPR, 2017 WL 3081685, at *10 (C.D. Cal. Apr. 7, 2017) (concluding second factor weighed against extraterritoriality where one party was domestic and another was foreign).  Third, "Defendants do not contest this Court's jurisdiction or ability to enforce a judgment," meaning "this factor

the United States-based grocery store plaintiff alleged the Canadian defendant purchased its products in the United States for resale in Canada).

The question, therefore, is whether civil contempt is warranted under the circumstances. "Civil contempt . . . consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014) (alteration in original) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)). "The standard for finding a party in civil contempt is well settled" in the Ninth Circuit. *See F.T.C. v. Affordable Media*, 179 F.3d 1228, 1239 (9th Cir. 1999). "The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *Id.* (quoting *Stone v. City & Cty. of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992)). "The burden then shifts to the contemnors to demonstrate why they were unable to comply." *Id.* (quoting *Stone*, 968 F.2d at 856 n.9). Accordingly, "the order alleged to have been disobeyed must be sufficiently specific," *Balla v. Idaho State Bd. of Corr.*, 869

---

weighs in favor of extraterritorial application." *See Updateme Inc. v. Axel Springer SE*, No. 17-CV-05054-SI, 2018 WL 1184797, at *8 (N.D. Cal. Mar. 7, 2018). Fourth, the Court has found that Defendants' conduct infringes Plaintiffs' trade dress rights and is likely to cause consumer confusion in the United States, (*see, e.g.*, Prelim. Inj. at 32–40), which favors extraterritoriality here. *See, e.g.*, *Trader Joe's*, 835 F.3d at 974; *Sound N Light*, 2017 WL 3081685, at *10. Fifth and sixth, the Court found that there was at least some evidence of direct copying here, (*see, e.g.*, Prelim. Inj. at 30), which "support[s] the conclusion that [Defendants] intended to harm [Plaintiffs], or, at a minimum, that such harm was foreseeable." *See, e.g.*, *Trader Joe's*, 835 F.3d at 974; *Sound N Light*, 2017 WL 3081685, at *11 ("[A] company will likely be harmed if a defendant takes that company's proprietary information, produces a similar product, and sells that product in the same market served by the company."). Finally, a significant portion of Defendants' allegedly infringing conduct occurs in the United States in the form of sales by its foreign distributors, including ZimVie, to United States customers. *See, e.g.*, *Sound N Light*, 2017 WL 3081685, at *11 (concluding this factor "weighs slightly in favor of extraterritorial application" where the counter-defendant "actively targets potential consumers in the United States" and "the [counterclaimant]'s main contention lies with the products sold in the United States"); *cf. Trader Joe's*, 835 F.3d at 975 (noting that this factor may weigh against extraterritoriality where "most of [the defendant]'s infringing activity occurs abroad").

Accordingly, all three prongs of the *Timberlane* test weigh in favor of extraterritorial application of the Lanham Act to Defendants' sales of its DESSLoc® product suite.

1   F.2d 461, 465 (9th Cir. 1989) (citing *Int'l Longshoremen's Ass'n, Local 1291 v. Phil.*
2   *Marine Trade Ass'n*, 389 U.S. 64, 76 (1967)), and, "[i]f an injunction does not clearly
3   describe prohibited or required conduct, it is not enforceable by contempt." *Gates v. Shinn*,
4   98 F.3d 463, 468 (9th Cir. 1996).

5       "A party 'may not nullify a decree by carrying out prohibited acts through aiders and
6   abettors, although they were not parties to the original proceeding.'" *Cetacean Rsch*, 774
7   F.3d at 948 (quoting *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945)). Consequently,
8   "[i]n deciding whether an injunction has been violated it is proper to observe the objects
9   for which the relief was granted and to find a breach of the decree in a violation of the spirit
10  of the injunction, even though its strict letter may not have been disregarded." *Id.* at 949
11  (quoting *John B. Stetson Co. v. Stephen L. Stetson Co.*, 128 F.2d 981, 983 (2d Cir. 1942))
12  (first citing *Prang Co. v. Am. Crayon Co.*, 58 F.2d 715 (3d Cir. 1932); then citing *Cal.*
13  *Fruit Growers Exch. v. Sunkist Drinks, Inc.*, 25 F. Supp. 401 (S.D.N.Y. 1938); finally citing
14  *Salazar v. Buono*, 559 U.S. 700, 762 (2010) (Breyer, J., dissenting)). "Under such
15  circumstances, the party giving assistance need not affirmatively desire to cause a violation
16  of the injunction; it is enough that the party know a violation is highly likely to occur."
17  *Cetacean Rsch.*, 774 F.3d at 950.

18      The Ninth Circuit has "recognized a narrow 'good faith' exception to the general
19  rule that intent is irrelevant in civil contempt proceedings . . . 'if a defendant's action
20  appears to be based on a good faith and reasonable interpretation of (the court's [vague]
21  order)." *See Cetacean Rsch.*, 774 F.3d at 953 (quoting *Vertex Distrib., Inc. v. Falcon Foam*
22  *Plastics, Inc.*, 689 F.2d 885, 889 (9th Cir. 1982)). This exception does not extend,
23  however, where "[t]he *language* of the injunction itself is not ambiguous," *see id.* at 954
24  (emphasis in original), and where the only "ambiguity" is "whether the[ enjoined party]
25  c[an] avoid liability by hewing to the narrow letter of the injunction while simultaneously
26  ignoring its spirit." *See id.*

27      In *Institute of Cetacean Research*, for example, the Ninth Circuit issued an
28  injunction prohibiting a conservation organization from physically attacking or coming

1  within 500 yards of whalers' vessels on the open sea. *See id.* at 940–41. On the advice of
2  counsel, the conservation organization thereafter implemented a "separation strategy,"
3  through which it assigned responsibility for its whale defense program as well as certain
4  assets to related, foreign entities. *See id.* at 940–42. After several instances of these
5  entities' vessels coming within 500 yards of the whalers' vessels, the whalers filed a motion
6  for civil contempt. *See id.* at 943. Although the Appellate Commissioner issued a report
7  and recommendation recommending that the Ninth Circuit find that the conservation
8  organization had not committed an act of contempt, the Ninth Circuit found that "the
9  Commissioner wrongly concluded that the [conservation organization] could not be held
10 liable for aiding and abetting others to violate the injunction" and that "[t]he Commissioner
11 also wrongly concluded that the volunteer directors' good faith reliance on advice of
12 counsel was relevant to whether they violated the injunction." *See id.* at 944. Ultimately,
13 the Ninth Circuit held the conservation organization in contempt because its "separation
14 strategy aided and abetted [related] entities to perform acts that would have violated the
15 injunction if done by parties bound by it." *See id.* at 945.

16      Such is the case here. Although neither the Preliminary Injunction, (*see generally*
17 *id.*), nor any of the Parties' briefing, (*see* ECF Nos. 26, 36, 40), specifically addressed
18 extraterritoriality, the intent behind the Preliminary Injunction was clear, particularly given
19 that Defendants and Intervenor-Defendant are foreign entities. The same is true of
20 Defendants' continued sale of the DESSLoc® suite broken down into its constituent
21 parts—Defendants knew that these components would eventually be sold as part of an
22 infringing whole. Had Defendants harbored serious doubts as to the scope of the
23 Preliminary Injunction, they could easily have sought clarification from the Court. *See*
24 *Cetacean Research*, 774 F.3d at 954 (citing *McComb v. Jacksonville Paper Co.*, 336 U.S.
25 187, 192 (1949)). Instead, Defendants adopted a "self-serving interpretation of their
26 obligations under [the Preliminary I]njunction" and "assumed the risk that their attempts
27 at technical compliance would prove wanting." *See id.* at 954–55. The Court therefore
28 **GRANTS** Plaintiffs' Contempt Motion and **HOLDS** Defendants in civil contempt.

|    |    |
|---|---|
| 1  | This brings the Court to the proper remedy or remedies for Defendants' conduct. |
| 2  | Plaintiffs request disgorgement of profits, an award of reasonable attorneys' fees, and a per |
| 3  | diem fine of $5,000 payable by Defendants to the Court and remaining in effect until |
| 4  | Defendants submit an affidavit of compliance with the Preliminary Injunction.[4] (*See* |
| 5  | Contempt Mot. at i, 10–11.) The Court agrees that disgorgement of any profits earned in |
| 6  | violation of the Preliminary Injunction and that an award of attorneys' fees incurred in |
| 7  | filing the Contempt Motion and Reply are warranted. *See, e.g.*, *Cetacean Research*, 774 |
| 8  | F.3d at 958–59 (awarding "fees and costs" as well as "compensation for any actual |
| 9  | damages suffered"). Accordingly, following meet and confer efforts with Defendants to |
| 10 | avoid Court intervention, Plaintiffs **MAY FILE** a properly supported motion seeking to |
| 11 | recover these amounts. Although the Court would also be well within its discretion to |
| 12 | award the requested per diem fine, because the Court has now clarified the scope of the |
| 13 | Preliminary Injunction, the Court **GRANTS** Defendants fourteen (14) days from the date |
| 14 | this Order is electronically docketed in which to come into full compliance with the |
| 15 | Preliminary Injunction, on which date Defendants **SHALL FILE** an affidavit of |
| 16 | compliance with the Preliminary Injunction on the docket. *Should Defendants fail timely* |
| 17 | *to file the ordered affidavit of compliance, the Court will impose a $5,000 per diem fine* |
| 18 | *until the affidavit is filed.* |
| 19 | **DEFENDANTS' BOND MOTION** |
| 20 | As the Court noted in the Preliminary Injunction, (*see id.* at 43–44), under Federal |
| 21 | Rule of Civil Procedure 65(c), "[t]he court may issue a preliminary injunction . . . *only* if |
| 22 | the movant gives security in an amount that the court considers proper to pay the costs and |
| 23 | damages sustained by any party found to have been wrongfully enjoined." *See* Fed. R. |
| 24 | Civ. P. 65(c) (emphasis added). "Despite the seemingly mandatory language, 'Rule 65(c) |
| 25 | invests the district court 'with discretion as to the amount of security required, *if* |

---

[4] Although Plaintiffs also requested expedited discovery, Plaintiffs concede in their Reply that "the commencement of discovery has mooted [their] request." (*See* Contempt Reply at 7 n.3.)

any.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis in original) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). "The district court is afforded wide discretion in setting the amount of the bond." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) (citing *Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 733 (9th Cir. 1999)).

Because "the purpose of . . . a bond is to cover any costs or damages suffered by the [party sought to be enjoined], arising from a wrongful injunction," *see Gorbach v. Reno*, 219 F.3d 1087, 1092 (9th Cir. 2000), "the party affected by the injunction [bears the] obligation of presenting evidence that a bond is needed." *See Conn. Gen*, 321 F.3d at 883; *accord Gorbach*, 219 F.3d at 1092 (affirming district court's decision not to require bond where the party sought to be enjoined "did not show that there would be any" damages). Consequently, if the party affected by the injunction fails to request a bond or submit any evidence regarding its likely damages, the court does not abuse its discretion by setting a bond of zero. *See Conn. Gen*, 321 F.3d at 882–83.

Defendants failed to request bond in their opposition to Plaintiffs' motion for a preliminary injunction. (*See generally* ECF No. 36.) Although the Court could properly have declined to require Plaintiffs to post any bond as a result, (*see* Prelim. Inj. at 44 (citing *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882–83 (9th Cir. 2003); *Am. Rena Int'l Corp v. Sis-Joyce Int'l Co.*, No. CV-12-06972-DMG-JEMX, 2012 WL 12538385, at *7 (C.D. Cal. Oct. 15, 2012), *aff'd*, 534 F. App'x 633 (9th Cir. 2013)), the Court allowed Defendants the opportunity to file "a supplemental brief accompanied by all evidence necessary to support their request for bond." *See id.*

The Court is now in receipt of Defendants' supplemental briefing, which requests "only a modest bond of $100,000." (*See* Bond Mot. at 2.) The Court agrees that the amount requested is reasonable, but the figure is calculated based on the "extra marketing and shipping costs" Defendants have incurred in complying with their erroneous understanding of the Court's Preliminary Injunction and "the remainder of 2022 sales." (*See id.*) Because the Court concludes that the marketing and shipping costs Defendants have incurred were

in violation of the Preliminary Injunction, *see supra*, the Court **DECLINES** to include those costs as part of the bond.

Plaintiffs object to remainder of Defendants' calculation on the grounds that revenue is the wrong measure of supposed harm from the Preliminary Injunction, (*see* Bond Opp'n at 3–4), and that Defendants do "not quantify or support with record citations [their] purported competitive and reputational harm." (*See id.* at 6–7.)  The Court agrees. Defendants have now been provided two opportunities to substantiate their request for bond.  The Court therefore **DENIES WITH PREJUDICE** Defendants' Bond Motion.

## CONCLUSION

In light of the foregoing, the Court **DENIES AS MOOT** Plaintiffs' Motion to Dismiss (ECF No. 92), **GRANTS** Plaintiffs' Contempt Motion (ECF No. 61), and **DENIES WITH PREJUDICE** Defendants' Bond Motion (ECF No. 89).  As indicated above, *see supra* pages 7–8, the Court **HOLDS** Defendants in civil contempt of its July 18, 2022 Preliminary Injunction and **GRANTS** Plaintiffs' request to recovers its reasonable attorneys' fees and costs and for disgorgement of Defendants' post-injunction profits from sales of the infringing DESSLoc® product suite and its components.  Plaintiffs **MAY FILE** a motion or motions to recover these amounts following a good faith attempt to resolve the matter with Defendants, and Defendants **SHALL FILE** an affidavit of compliance with the Preliminary Injunction within <u>fourteen (14) days</u> of the electronic docketing of this Order.

**IT IS SO ORDERED.**

Dated:  November 9, 2022

_____
Honorable Todd W. Robinson
United States District Judge