1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

11  ZEST ANCHORS, LLC d/b/a Zest
    DentalSolutions and ZEST IP
12  HOLDINGS, LLC,
13                              Plaintiffs,
14  v.
15  GERYON VENTURES, LLC d/b/a
    DESS-USA and TERRATS MEDICAL
16  SOCIEDAD LIMITADA,
17                              Defendants,
18
19  BIOMET 3I, LLC d/b/a ZimVie,
20                      Intervenor-Defendant.
21

Case No.:  22-CV-230 TWR (NLS)

**ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFFS'
MOTION TO STRIKE AND DISMISS
INTERVENOR-DEFENDANT'S
FIRST AMENDED
COUNTERCLAIMS**

(ECF No. 115)

22      Presently before the Court is the Motion to Strike and Dismiss Intervenor-
23  Defendant's First Amended Counterclaims ("Mot.," ECF Nos. 115 (public), 119 (sealed))
24  filed by Plaintiffs Zest Anchors, LLC d/b/a Zest Dental Solutions and Zest IP Holdings
25  (together, "Zest"), as well as the Response in Opposition ("Opp'n," ECF No. 135) filed by
26  Defendant-Intervenor and Counterclaimant Biomet 3i, LLC dba ZimVie's ("ZimVie") and
27  Plaintiffs' Reply in Support of ("Reply," ECF No. 138) the Motion.  The Court held a
28  hearing on March 9, 2023.  (*See* ECF No. 140.)  Having carefully considered ZimVie's

1

First Amended Counterclaims ("FAC," ECF No. 106 at 19–57) and those materials properly subject to judicial notice and incorporated by reference, the Parties' arguments, and the relevant law, the Court **GRANTS IN PART AND DENIES IN PART** the Motion, as follows.

## BACKGROUND[1]

On February 18, 2022, Plaintiffs filed a Complaint for Trademark Infringement, Trade Dress Infringement, Common Law Trademark Infringement, and Unfair Competition against Defendants Geryon Ventures, LLC d/b/a DESS-USA and Terrats Medical Sociedad Limitada (together, "DESS"). (*See generally* ECF No. 1 ("Compl.").) On March 7, 2022, Plaintiffs sought to preliminarily enjoin Defendants from selling their DESSLoc® suite of denture attachment products, which Plaintiffs claimed infringed the trademarks and trade dress of their LOCATOR® product suite. (*See generally* ECF No. 15.) Plaintiffs defined the "LOCATOR® Trade Dress" as their "characteristic LOCATOR® insert colors and distinctively-shaped gold LOCATOR® abutments," (*see* Compl. ¶ 21), and the "Zest Insert Color Marks" as United States Trademark Registration Nos. 4,622,637, 4,622,638, 4,622,639, 4,618,874, 4,618,875, and 4,618,876 on the Supplemental Register together with United States Trademark Serial Nos. 90/237,726, 90/237,737, 90/237,742, and 90/237,753 submitted for registration on the Principal Register. (*See id.* ¶¶ 34–35.) According to Zest, an impetus for their lawsuit and request for preliminary injunctive relief was that DESS had entered into a distribution agreement for its allegedly infringing DESSLoc® products with one of Zest's former distribution partners, ZimVie, under ZimVie's OverdenSURE® line. (*See generally, e.g.*, Compl. ¶¶ 72–77.)

/ / /

---

[1] The Parties are well-acquainted with the facts of this case; consequently, the Court assumes some degree of familiarity with Plaintiffs' Complaint (ECF No. 1) and the Court's Order Granting in Part and Denying in Part Plaintiffs' Motion for Preliminary Injunction (ECF Nos. 49 (public) & 50 (sealed) (the "Preliminary Injuction")).

On July 18, 2022, the Court granted in part as to the LOCATOR® Trade Dress and denied in part as to the Zest Insert Color Marks Plaintiff's request for preliminary injunctive relief.  (*See generally* Preliminary Injunction.)  Specifically, the Court:

> **ENJOIN[ED] AND RESTRAIN[ED]** until the entry of final judgment in this action Defendants Geryon Ventures, LLC d/b/a DESS-USA, and Terrats Medical Sociedad Limitada, together with their agents, employees, representatives, and all persons and entities in concert or participation with them from engaging in, committing or performing, directly or indirectly, any and all of the following acts:
>
>     1.     Using in any way, including in connection with the promotion, marketing, advertising, and sale of products or services, Zest's LOCATOR® product suite trade dress or any trade dress that is a colorable imitation thereof, or confusingly similar thereto; and
>
>     2.     Importing into the United States any products that use the LOCATOR® product suite trade dress or trade dress that is a colorable imitation thereof, or confusingly similar thereto.

(*See* Prelim. Inj. at 45 (emphasis in original).)

On July 21, 2022, Zest issued the following statement (the "Press Release"):

### Zest Dental Solutions Protects LOCATOR® with Court Ruling

*Decision helps assure Zest customers receive genuine LOCATOR® products*

Carlsbad, CA – (July 21, 2022) – Zest Dental Solutions, the only manufacturer of the Zest LOCATOR® Family of Abutment Systems, including the LOCATOR® Overdenture Implant System, announces a significant legal victory which solidifies and reinforces the legitimacy of its LOCATOR® product line.

On Monday, July 18, 2022, a Southern District of California court issued an opinion and order in Zest Anchors, LLC v. Geryon Ventures, LLC, 22-cv-230, that preliminarily enjoins and restrains Geryon Ventures, LLC, d/b/a DESS-USA, and Terrats Medical Sociedad Limitada, which sell overdenture products under the trade name "DESS," from importing into the United States and "using in any way" the DESS overdenture system that imitates Zest's LOCATOR® product line while Zest pursues its claims.

3

The ruling helps to assure Zest customers, new and old, that when they buy Zest LOCATOR® products they will receive the genuine article.  Zest led this lawsuit after learning that DESS had partnered with one of Zest's former LOCATOR® distributors (ZimVie, formerly known as Zimmer Biomet) and was preparing to begin offering DESS's infringing products, which copy the well-known aesthetic features of Zest's market-leading LOCATOR® overdenture products, across the United States.

Importantly, the Court not only enjoined DESS but all persons and entities acting in concert or participating with DESS to import, market, or sell DESS's infringing products (including infringing products sold by ZimVie).

Tom Stratton, CEO of Zest Dental Solutions, stated, "The Court's opinion and order is a key signal that DESS's transparent efforts to create infringing products that deceive consumers and capitalize on Zest's reputation and success will not be permitted.  Zest intends to vigorously pursue its rights in the litigation as part of its vigilant efforts to defend its intellectual property, protect its customers, and serve patients."

To learn more about Zest Dental Solutions and how the LOCATOR® family can help you exceed patient expectations and grow your practice, call 800-262-2310 or visit www.zestdent.com.

**About ZEST Anchors, LLC**
Zest Dental Solutions is a global leader in the design, development, manufacturing, and distribution of diversified dental solutions for a continuum of patient care from the preservation of natural teeth to the treatment of total edentulism.  The company's product offering consists of a range of solutions including the LOCATOR® Family of Attachment Systems, LOCATOR® Implant Systems, Consumables and Dental Equipment, with global distribution through Implant Companies, dealer/distributor networks, as well as a domestic retail sales operation.  Zest Dental Solutions is headquartered in Carlsbad, California with operations in Anaheim and Escondido, California.  Zest Dental Solutions is a portfolio company of BC Partners, a leading private equity firm.  For more information, please visit www.zestdent.com

**Media Contact Information:**
**Troy Anderson | Tel: 760-520-5342 | Email:** troy.anderson@zestdent.com

/ / /

/ / /

(*See* ECF No. 106 at 62 ("FAC Ex. B") (emphasis in original).[2])

On August 29, 2022, ZimVie sought to intervene in this action.  (*See generally* ECF No. 69.)  The request that was unopposed, (*see id.* at II (Defendants' non-opposition); ECF No. 78 (Plaintiffs' non-opposition)), and the Court granted it on August 23, 2022.  (*See generally* ECF No. 80.)

ZimVie filed its Answer, Affirmative Defenses, and Counterclaims on September 26, 2022, (*see generally* ECF No. 81), and its operative First Amended Answer, Affirmative Defenses, and Counterclaims on November 7, 2022.  (*See generally* ECF No. 106.)  Generally speaking, ZimVie's counterclaims are premised on Zest's filing of this action and publication of the Press Release.  (*See id.*)  Specifically, ZimVie contends that Zest filed this action "to interfere with DESS and ZimVie's business relationship, customer relationships, and to inhibit ZimVie and DESS's fair competition in the market," (*see id.* at ¶ 2), and that Zest's Press Release contains false or misleading statements "with the aim of diverting sales towards Zest and damaging ZimVie's goodwill and market standing." (*See id.* ¶ 4.)  Based on these facts, ZimVie asserts nine counterclaims: (1) declaratory judgment of invalidity of the Insert Color Marks; (2) declaratory judgment of invalidity of the LOCATOR® Trade Dress; (3) petition for cancellation of the Insert Color Marks pursuant to 15 U.S.C. § 1119; (4) declaratory judgment of non-infringement of Plaintiffs' Insert Color Marks; (5) declaratory judgment of non-infringement of Plaintiffs' LOCATOR® Trade Dress; (6) false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (7) false advertising under California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500–17509; (8) intentional interference with prospective economic advantage ("IIPEA"); and (9) intentional interference with contractual relations ("IICR").  (*See generally id.* at 19–57.)

---

[2] Because the Press Release is appended as an exhibit to ZimVie's First Amended Counterclaims and forms the basis of certain of ZimVie's counterclaims, the Court may properly consider it as incorporated by reference for purposes of deciding the Motion.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

On November 21, 2022, Plaintiffs filed the instant Motion seeking to dismiss and/or strike certain of ZimVie's First Amended Counterclaims.  (*See generally* ECF No. 115.)

**LEGAL STANDARD**

## I.    Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'"  *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is

/ / /

6

entitled to relief.'" *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

"Rule 9(b) requires that, when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud.'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Id.* (internal quotation marks omitted) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "A district court does not err in denying leave to amend where the amendment would be futile." *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991)).

## II.    Motion to Strike Pursuant to California Code of Civil Procedure § 425.16

"California law provides for the pre-trial dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or SLAPPs, that masquerade as ordinary lawsuits but are intended to deter ordinary people from exercising their political or legal rights or to punish them for doing so." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013) (internal quotation marks omitted) (quoting *Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003), *overruled by statute on other grounds as stated in Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 766–67 (9th Cir. 2017)). "California's anti-SLAPP statute allows a defendant to file a 'special motion to strike' to dismiss an action before trial." *Id.*

(citing Cal. Civ. Proc. Code § 425.16).  This "allow[s] the early dismissal of meritless lawsuits aimed at chilling expression through costly, time-consuming litigation."  *See Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009).  "Motions to strike a state law claim under California's anti-SLAPP statute may be brought in federal court," *Makaeff*, 715 F.3d at 261 (quoting *Vess*, 317 F.3d at 1109), although the anti-SLAPP statute does not apply to claims asserted under federal law.  *See DC Comics v. Pac. Pictures Corp.*, 706 F.3d 1009, 1013 n.5 (9th Cir. 2013); *see also Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010).

 "To prevail on an anti-SLAPP motion, the moving defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." *Makaeff*, 715 F.3d at 261 (citing *Batzel*, 333 F.3d at 1024).  "[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute." *Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002).  The "critical consideration is whether the cause of action is based on the defendant's protected free speech or petitioning activity." *Id*.  Only if the court determines that relief is sought based on protected activity does it reach the second step. *See Baral v. Schnitt*, 1 Cal. 5th 376, 396 (2016).

If the court reaches the second step, "[t]he burden then shifts to the plaintiff . . . to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal." *Makaeff*, 715 F.3d at 261 (citing Cal. Civ. Proc. Code § 425.16(b)(1); *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 21 (2007)).  The Court "will review anti-SLAPP motions to strike under different standards depending on the motion's basis." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833 (9th Cir.), *concurrence amended*, 897 F.3d 1224 (9th Cir. 2018).  "[O]n the one hand, when an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Id*. at 834.  "And, on the other hand, when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil

Procedure 56 standard will apply." *Id.* at 834. In the latter situation, "discovery must be allowed." *See id.*

If the plaintiff ultimately fails to meet its burden at the second step, the claim based on protected activity is stricken and "[a]llegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." *Baral*, 1 Cal. 5th at 396. "[A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c)(1).

## ANALYSIS

Through the instant Motion, Plaintiffs seek to (1) dismiss under Rule 12(b)(6) ZimVie's sixth counterclaim for violation of Section 43(a) of the Lanham Act, (*see* Mot. at 6–8); (2) dismiss under Rule 12(b)(6) and/or strike under California's anti-SLAPP statute ZimVie's seventh (FAL), eighth (IIPEA), and ninth (IICR) counterclaims, (*see* Mot. at 8–14); and (3) dismiss under Rule 12(b)(6) ZimVie's first (declaratory judgment of invalidity of the Insert Color Marks) and third (petition for cancellation of the Insert Color Marks) counterclaims as barred under the doctrine of licensee estoppel. (*See* Mot. at 14–16.)

### I. ZimVie's Sixth Counterclaim

ZimVie's sixth counterclaim for violation of Section 43(a) of the Lanham Act alleges that Zest's Press Release contained false or misleading statements regarding Plaintiffs' and Defendants' products and the Court's Preliminary Injunction. (*See* FAC ¶¶ 124–36.) Specifically, ZimVie identifies three false and/or misleading statements in the Press Release: (1) Defendants' DESSLoc® products "infringe" Zest's LOCATOR® products, (2) ZimVie's products "infringe" Zest's LOCATOR® products, and (3) the Preliminary Injunction applies to ZimVie. (*See id.* at 126; *see also* Opp'n at 2.)

To allege a false advertising claim under Section 43(a) of the Lanham Act, ZimVie must allege the following:

/ / /

1
2
3
4
5
6

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

7
8
9

*Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997). Zest contends that ZimVie fails sufficiently to allege the first element, *i.e.*, that the Press Release is false or misleading. (*See* Mot. at 6–8.)

10
11
12
13
14
15
16
17
18
19
20

"To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland*, 108 F.3d at 1139 (citing *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943, 946 (3d Cir. 1993)). "When evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context." *Id.* (citing *Castrol*, 987 F.2d at 946; *Am. Home Prods. Corp. v. FTC*, 695 F.2d 681, 687 (3d Cir. 1982); *Cuisinarts, Inc. v. Robot-Coupe Int'l Corp.*, No. 81 CIV 731(CSH), 1982 WL 121559, *2 (S.D.N.Y. June 9, 1982)). "Thus courts have held that a claim can be literally false 'by necessary implication.'" *Id.* (quoting *Castrol*, 987 F.2d at 946) (citing *Tambrands, Inc. v. Warner-Lambert Co.*, 673 F. Supp. 1190, 1193–94 (S.D.N.Y. 1987)).

21
22
23
24
25
26
27
28

"Even if an advertisement is not literally false, relief is available under Lanham Act § 43(a) if it can be shown that the advertisement has misled, confused, or deceived the consuming public." *Id.* at 1140 (citing *Sandoz Pharmaceuticals Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 228–29 (3d Cir. 1990); *Am. Home Prods. Corp. v. Johnson & Johnson*, 577 F.2d 160, 165–66 (2d Cir. 1978); *U-Haul Int'l, Inc. v. Jartran, Inc.*, 522 F. Supp. 1238, 1248–49 (D. Ariz. 1981), *aff'd*, 681 F.2d 1159 (9th Cir. 1982)). As the Parties agreed at oral argument, whether an advertisement is misleading is determined based on the viewpoint of a "reasonable consumer." *See, e.g.*, *Cook, Perkiss & Liehe, Inc. v. N. Cal.*

*Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990). "Typically, '[w]hether a statement is nonactionable opinion or actionable misrepresentation of fact is a question of fact for the jury.'" *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 931 (9th Cir. 2010) (alteration in original) (quoting *Furla v. Jon Douglas Co.*, 65 Cal. App. 4th 1069, 1081 (1998)); (*see also* Opp'n at 4).

Zest's argument for dismissal is twofold. First, Zest argues that there is nothing false or misleading in the Press Release because it accurately sets forth the scope of the Preliminary Injunction. (*See* Mot. at 7–8; Reply at 2–3.) Second, Zest contends that its position that DESS's DESSLoc® products copy and infringe Zest's LOCATOR® products "expresse[s] a legal opinion and not a 'statement of fact' within the meaning of the Lanham Act because the truth of Zest's position 'depends on the resolution of a disputed legal issue.'" (*See* Mot. at 8 (quoting *Cisco Sys. v. Dexon Comput., Inc.*, No. 20-cv-04926-CRB, 2022 WL 797015, at *5 (N.D. Cal. Mar. 16, 2022)).

The Court disagrees. Although the Court concluded in the Preliminary Injunction that Zest had demonstrated that it was *likely* to succeed on the merits of its trade dress infringement claims against DESS, (*see* Prelim. Inj. at 19–35), whether DESS—much less ZimVie—is actually infringing remains to be determined. The Court recognizes that Zest used the phrases "preliminarily" and "while Zest pursues its claims," (*see* FAC Ex. B); however, reading the Press Release as a whole, the Court cannot conclude as a matter of law that no reasonable consumer could have been deceived regarding the scope of the Court's Preliminary Injunction based on Zest's Press Release. Indeed, ZimVie alleges that several reports and consumers understood the Press Release to mean that the Court had concluded that ZimVie was acting unlawfully. (*See* FAC ¶¶ 73–80; *see also* ECF No. 65-1 ("Meehan Decl.") ¶ 15.)

Further, the Press Release goes beyond expressing Zest's "legal opinions" because it imputes certain "conclusions"—that have yet to be reached—to the Court. For example, Zest reports that "the Court not only enjoined DESS but all persons and entities acting in concert or participating with DESS to import, market, or sell DESS's infringing products

(including infringing products sold by ZimVie)." (*See* FAC Ex. B.)  Zest's in-Circuit cases are distinguishable because the Ninth Circuit case on which those cases ultimately rely recognized that, "[a]bsent a clear and unambiguous ruling from a court or agency of competent jurisdiction, statements by laypersons that purport to interpret the meaning of a statute or regulation are opinion statements, and not statements of fact." *See Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999) (citing *Dial A Car, Inc. v. Transp., Inc.*, 82 F.3d 484, 488–89 (D.C. Cir. 1996); *Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 230–32 (3d Cir. 1990)); *cf. Cisco Sys., Inc. v. Dexon Comp., Inc.*, No. 20-CV-04926-CRB, 2022 WL 797015, at *5 (N.D. Cal. Mar. 16, 2022) (citing *Coastal Abstract*, 173 F.3d at 731) (cited in Mot. at 8); *Philips N. Am., LLC v. Summit Imaging Inc.*, No. C19-1745JLR, 2020 WL 1515624, at *6 (W.D. Wash. Mar. 30, 2020) (citing *Coastal Abstract*, 173 F.3d at 731) (cited in Mot. at 8).  Here, Zest's statements concern the Court's "clear" decision, (*see, e.g.*, ECF No. 113 at 1), not the meaning of a statute or regulation.

Because the Court concludes that ZimVie sufficiently pleads a false statement of fact, the Court **DENIES** Zest's Motion as to ZimVie's sixth counterclaim for violation of Section 43(a) of the Lanham Act.

## II.   ZimVie's Seventh, Eighth, and Ninth Counterclaims

Zest argues that ZimVie's seventh (violation of California's FAL), eighth (IIPEA), and ninth (IICR) counterclaims must be both dismissed under Rule 12(b)(6) and stricken under California's anti-SLAPP statute.  (*See* Mot. at 8–14.)

### A.    Motion to Dismiss Pursuant to Rule 12(b)(6)

#### 1.    ZimVie's Seventh Counterclaim

ZimVie's seventh counterclaim for violation of California's FAL alleges that "Zest made statements constituting commercial speech advertising that were untrue or misleading, or which Zest should have known were untrue or misleading."  (*See* FAC ¶ 138.)  To state a claim, ZimVie must allege "(1) An untrue or misleading statement; (2) Which is known, or reasonably should be known, to be untrue or misleading; and (3) Is

made to dispose of goods, perform services, or induce obligations." *Royal Holdings Techs. Corp. v. FLIR Sys., Inc.*, No. 2:20-CV-09015-SBPLAX, 2021 WL 945246, at *6 (C.D. Cal. Jan. 8, 2021) (quoting *Arakelian v. Mercedes-Benz USA, LLC*, No. CV 17-06240 TJH (RAOx), 2018 WL 6422649, at *4 (C.D. Cal. June 4, 2018) (quoting Cal. Bus. & Prof. Code 17500)). Zest identifies three purported pleading deficiencies: (1) ZimVie has not identified a false statement, (2) ZimVie lacks standing,[3] and (3) ZimVie cannot recover damages. (*See* Mot. at 9–10.)

First, Zest contends that ZimVie's FAL counterclaim must fail because it "rehashes ZimVie's federal [Lanham Act] claim," (*see* Mot. at 9), and therefore also fails to

_____

[3] Regarding Zest's standing argument, (*see* Mot. at 9), "[i]n 2004[,] . . . the voters of California passed Proposition 64, which restricts standing for individuals alleging [unfair competition law ("UCL")] and FAL claims to persons who have suffered injury in fact and have lost money or property as a result of the unfair competition." *Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, No. 20CV1765-GPC(BGS), 2021 WL 1541649, at *7 (S.D. Cal. Apr. 20, 2021) (third and fourth alterations in original) (quoting *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir.), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013)). "The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation." *Id.* (quoting *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326 (2011)). "But where a UCL [or FAL] claim 'sounds in fraud, [the plaintiff is] required to prove actual reliance on the allegedly deceptive or misleading statements, and that the misrepresentation was an immediate cause of [the] injury-producing conduct.'" *Id.* (second and third alterations in original) (quoting *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012)).

"[N]o California state court has addressed whether 'competitor plaintiffs must plead their own reliance or whether pleading consumer reliance is sufficient for fraudulent business practice claims brought by competitors[,]'" resulting in "a split of authority in the California district courts with a majority view that a plaintiff must allege its own reliance and not the reliance of third parties." *Id.* at *8 (citing *Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc.*, No. 20CV1765-GPC(BGS), 2021 WL 148063, at *6 (S.D. Cal. Jan. 15, 2021) (quoting *23&Me, Inc. v. Ancestry.com DNA, LLC*, 356 F. Supp. 3d 889, 911 (N.D. Cal. 2018)) (citing *In re Outlaw Lab'y, LLP*, 463 F. Supp. 3d 1068, 1086 (S.D. Cal. 2020))); *accord Tracy Anderson Mind & Body, LLC v. Roup*, No. CV 22-4735-RSWL-EX, 2022 WL 17670418, at *7 (C.D. Cal. Dec. 12, 2022) ("[T]here is a split of authority in the California district courts with a majority view that a plaintiff must allege its own reliance and not the reliance of third parties."). Whether the Court were to apply the majority or minority view would be dispositive of whether ZimVie does not or does have standing, respectively, under California's FAL. Because the Court concludes that dismissal of ZimVie's FAL cause of action is appropriate based on Zest's final argument regarding damages, the Court declines to decide whether to follow the majority or minority view regarding the standing issue at this time.

"identif[y] a false statement."  (*See* Reply at 4.)  For the same reasons that the Court concludes that ZimVie plausibly alleges a false statement of fact under Section 43(a) of the Lanham Act, *see supra* Section I, the Court also concludes that ZimVie sufficiently pleads an untrue or misleading statement for purposes of the FAL.

Second, Zest argues that ZimVie fails to plead a permissible basis for relief under the FAL because ZimVie seeks monetary damages, which are not authorized under the FAL.  (*See* Mot. at 9–10 (quoting *In re Outlaw Lab'y*, 463 F. Supp. 3d at 1090).)  Although ZimVie argues in its Opposition that it properly seeks to recover for "time and resources [spent] addressing" Zest's Press Release, (*see* Opp'n at 8), ZimVie's First Amended Counterclaim alleges that "ZimVie has suffered damages in the form of lost money and property.  Specifically, ZimVie has experienced lost or diverted sales and harm to its reputation and goodwill."  (FAC ¶ 142.)  "Restitution requires both that money or property have been lost by a [claimant], on the one hand, and that it have been acquired by a [counterclaimant], on the other."  *See Sharpe v. Puritan's Pride, Inc.*, 466 F. Supp. 3d 1066, 1071 (N.D. Cal. 2020).  Such allegations are missing here, (*see* Reply at 5–6), as ZimVie conceded at oral argument.  Because ZimVie fails to plead a permissible basis for relief under the FAL, the Court **GRANTS** Zest's Motion and **DISMISSES WITHOUT PREJUDICE** ZimVie's seventh counterclaim for violation of California's FAL.  *See, e.g.*, *Tortilla Factory, LLC v. Trader Joe's Co.*, No. CV 18-02977 CBM (ASx), 2018 WL 8367468, at *5 (C.D. Cal. Oct. 11, 2018) (dismissing FAL claim seeking recovery based on the defendant's profits); *Pom Wonderful LLC v. Welch Foods, Inc.*, No. CV 09-567 AHM (AGRx), 2009 WL 5184422, at *2–3 (C.D. Cal. Dec. 21, 2009) (dismissing FAL claim seeking to recover lost goodwill).

### 2.  *ZimVie's Eighth Counterclaim*

In its eighth counterclaim for intentional interference with prospective economic advantage, ZimVie alleges that "Zest intentionally acted to disrupt [certain known] relationships [between ZimVie and key opinion leaders ("KOLs")] by at least its false and misleading Press Release."  (*See* FAC ¶ 146.)  To state a claim for  intentional interference

with prospective economic advantage under California law, ZimVie must allege: "(1) an economic relationship between the [claimant] and some third party, with the probability of future economic benefit to the [claimant]; (2) the [counterclaimant]'s knowledge of the relationship; (3) intentional [wrongful] acts on the part of the [counterclaimant] designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the [claimant] proximately caused by the acts of the [counterclaimant]." *See Soil Retention Prod., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 963 (S.D. Cal. 2021) (fourth alteration in original). Zest argues ZimVie's intentional interference with prospective economic advantage counterclaim must fail because ZimVie has failed to allege a specific relationship, (*see* Mot. at 10–11), or any intentional wrongful act by Zest. (*See id.* at 11–12.)

With regard to Zest's first argument, "[w]hile . . . a [claimant] need not give the name of the third-party, . . . a [claimant] . . . must allege sufficient facts to allow the Court to plausibly infer some real third-party—named or unnamed—existed and expected to partake in the relationship." *See Logistick, Inc. v. AB Airbags, Inc.*, 543 F. Supp. 3d 881, 889 (S.D. Cal. 2021). Here, ZimVie alleges that several of its KOLs saw the Press Release and contacted ZimVie about it, (*see, e.g.*, FAC ¶ 80), which has harmed ZimVie's economic prospects with those KOLs in the form of diverting sales from ZimVie to Zest and lessening those KOLs' goodwill for ZimVie and its OverdenSURE® product line. (*See, e.g., id.* ¶¶ 85, 87–88.) At the pleading stage, these allegations suffice to "put[ Zest] on notice that a third-party, indeed, existed." *See Logistick*, 543 F. Supp. 3d at 890 (first citing *Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App. 3d 1120, 1127–28 (1986); then citing *Mussnich v. Teixeira*, No. 2:20-CV-09679-MCS-AS, 2021 WL 1570832, at *4 (C.D. Cal. Feb. 23, 2021); finally citing *Qwest Commc'ns Corp. v. Herakles, LLC*, No. 2:07-CV-00393MCEKJM, 2008 WL 783347, at *1, *11 (E.D. Cal. Mar. 20, 2008)).

Turning to Zest's second argument, as previously discussed, *see supra* Sections I, II.A.1, the Court has concluded that ZimVie sufficiently alleges that Zest published a Press

Release containing false or misleading statements of fact.  Therefore, the Court **DENIES** Zest's Motion as to ZimVie's eighth counterclaim for intentional interference with prospective economic advantage.  *See, e.g.*, *Code Rebel, LLC v. Aqua Connect, Inc.*, No. CV 13-4539 RSWL MANX, 2013 WL 5405706, at *6 (C.D. Cal. Sept. 24, 2013) ("Plaintiff alleges facts that Defendant engaged in intentional acts to disrupt those relationships by embarking on a pattern of defamation and disparagement of [the plaintiff's] programs and [the p]laintiff itself.").

### 3.    *ZimVie's Ninth Counterclaim*

In its Opposition, ZimVie indicates that it "is no longer asserting its tortious interference with contract claim (Ninth Counterclaim), and Zest has agreed to its dismissal." (*See* Opp'n at 12.)  ZimVie therefore contends that Zest's Motion is moot as to its ninth counterclaim, while Zest contends that the counterclaim should be dismissed with prejudice for the reasons raised in its Motion. (*See* Reply at 7–8.)  Because the Court agrees that Zest's Motion is moot as to ZimVie's ninth counterclaim for intentional interference with contractual relationship, the Court **DISMISSES WITHOUT PREJUDICE** that counterclaim.

### B.    **Motion to Strike Pursuant to California's Anti-SLAPP Statute**

In addition to arguing for their dismissal under Rule 12(b)(6), Zest also argues that ZimVie's seventh, eighth, and ninth counterclaims, which "rely on allegations regarding Zest's filing of its trade dress, trademark, and unfair competition complaint (Count 9) and its issuance of statements in its Press Release addressing the Court's trade dress (Counts 6–8),"[4] are barred by California's anti-SLAPP statute. (*See* Mot. at 13.)  ZimVie does not dispute that these claims are within the scope of the anti-SLAPP statute, (*see generally* Opp'n at 12–16; *see also* Reply at 8); rather, ZimVie argues that the "commercial speech

---

[4] To the extent Zest seeks to strike ZimVie's sixth counterclaim pursuant to California's anti-SLAPP statute, (*see* Mot. at 5, 13; *but cf.* Reply at 8 n.9), that request must be denied because "[t]he anti-SLAPP statute cannot be used to strike federal causes of action."  *See UCP Int'l Co. Ltd. v. Balsam Brands Inc.*, 420 F. Supp. 3d 966, 974 (N.D. Cal. 2019).

exception" to the anti-SLAPP statute applies to its seventh (FAL) and eighth (IIPEA) claims.  (*See* Opp. at 12–16.)

Under the factors articulated in *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12 (2010), causes of action arising from commercial speech are exempt from the anti-SLAPP law when:

    (1)    the cause of action is against a person primarily engaged in the business of selling or leasing goods or services;

    (2)    the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services;

    (3)    the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and

    (4)    the intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer.

*Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, 814 F. Supp. 2d 1033, 1036–37 (S.D. Cal. 2011) (quoting *Simpson*, 49 Cal. 4th at 30).  "The purpose of this exemption is straightforward:  A defendant who makes statements about a business competitor's goods or services to advance the defendant's business cannot use the anti-SLAPP statute against causes of action arising from those statements."  *Xu v. Huang*, 73 Cal. App. 5th 802, 813 (2021), *review denied* (Apr. 13, 2022).  "The commercial speech exemption . . . 'is a statutory exception to section 425.16' and 'should be narrowly construed.'"  *See Simpson*, 49 Cal. 4th at 22 (quoting *Club Members for an Honest Election v. Sierra Club*, 45 Cal. 4th 309, 316 (2008)).

Zest contends that the commercial speech exception is inapplicable for two reasons.  (*See* Reply at 8.)  First, "the commercial speech exception reaches only 'representations of *fact*,' but ZimVie's claims all arise from statements of legal opinion."  (*See id.* (emphasis

in original) (quoting Cal. Civ. Proc. Code § 425.17(c)(1)).)  ZimVie, on the other hand,

contends that the Press Release contained representations of fact about ZimVie's, DESS's,

and Zest's operations and products.  (*See* Opp'n at 14 (citing FAC ¶¶ 70–71; FAC Ex. B).)

Second, Zest contends that "the Press Release is a litigation update, not comparative

advertising, so it is not exempt from the Anti-SLAPP Statute."  (*See* Reply at 8–9.)

ZimVie, however, notes that the Press Release compares Zest's "genuine article" to the

"infringing products sold by ZimVie."  (*See* Opp'n at 14–15 (citing FAC ¶¶ 70–71; FAC

Ex. B).)  Additionally, "the Press Release provides contact information and a website URL

for readers '[t]o learn more about' Zest's products and how they 'can help you exceed

patient expectations and grow your practice[.]'"  (*See id.* at 14 (quoting FAC ¶ 71; FAC

Ex. B).)

The facts of this case present a close issue.  While an email summarizing litigation

that "did not discuss the parties' goods or services and was not sent to promote goods" may

not be exempted from the anti-SLAPP statute as commercial speech, *see Quidel Corp. v.

Siemens Med. Sols. USA, Inc.*, No. 16-CV-3059-BAS-AGS, 2019 WL 4747671, at *6 (S.D.

Cal. Sept. 27, 2019) (discussing *Contemporary Servs. Corp. v. Staff Pro Inc.*, 152 Cal. App.

4th 1043 (2007)), an email "to retailers advising them of the lawsuit and asking them not

to carry the defendant's product" that was intended "to make sure the retailers were aware

of the litigation and to improve the plaintiff's commercial relationship with the retailers"

could.  *See id.* (discussing *Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056

(N.D. Cal. 2006)).  Ultimately, as in *Quidel*, the Court concludes that "[t]his case is more

similar to *Sharper Image* than to *Contemporary Services*," *see Quidel*, 2019 WL 4747671,

at *7, because the Press Release did more than summarize Zest's allegations or provide a

summary of this litigation.  Instead, Zest's comparison of its "genuine article" to the

"infringing products sold by ZimVie" was intended "to encourage [dentists] not to carry or

promote [DESSLoc® or OverdenSURE®] and therefore to improve [Zest]'s relationship

and business with the [dentists]."  *See id.*

/ / /

The Court therefore concludes that the commercial speech exception applies and that the Press Release does not fall under anti-SLAPP coverage.  Accordingly, the Court **DENIES** Zest's Motion to the extent it attempts to strike ZimVie's seventh and eighth counterclaims under California's anti-SLAPP statute.

## III.   ZimVie's First and Third Counterclaims

Finally, Zest contends that ZimVie should be estopped from asserting its first and third counterclaims for declaratory judgment of invalidity and petition for cancellation, respectively, of the Zest Insert Color Marks under the doctrine of licensee estoppel, (*see* Mot. at 14–16), which "holds that licensees are estopped from challenging the validity of the licensor's trademark."  *See STX, Inc. v. Bauer USA, Inc.*, No. C 96-1140 FMS, 1997 WL 337578, at *10 (N.D. Cal. June 5, 1997) (citing *Pac. Supply Coop. v. Farmers Union Cent. Exch.*, 318 F.2d 894, 908 (9th Cir. 1963); *In re Houbigant, Inc.*, 914 F. Supp. 964, 993 (S.D.N.Y. 1995)).

ZimVie makes two arguments against dismissal of its first and third counterclaims under the doctrine of licensee estoppel.  First, ZimVie argues that Zest's licensee estoppel argument fails because it relies on facts contained in the Distribution Agreement between ZimVie and Zest, which the Court cannot properly consider because no party attached the document to its pleadings.  (*See* Opp'n at 16–17.)  As noted above, *see supra* note 1, under the doctrine of incorporation by reference, the Court may properly consider those documents that are referenced extensively in ZimVie's First Amended Counterclaims or that form the basis of ZimVie's counterclaims.  *See Khoja*, 899 F.3d at 1002.  An important limitation to the incorporation-by-reference doctrine, however, is that "if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint."  *See id.*  Although the Distribution Agreement between Zest and ZimVie provides important context, (*see* FAC ¶¶ 16–19), it does not appear that the Distribution Agreement is referenced extensively in ZimVie's First Amended Counterclaims or that it forms the basis of any of ZimVie's counterclaims.  The Court therefore declines to consider the Distribution Agreement.  Even without the

Distribution Agreement, however, ZimVie's First Amended Counterclaim alleges facts that would allow the Court to infer that, between May 2008 and September 2021, Zest and ZimVie were parties to a distribution agreement that included a license for ZimVie to sell products incorporating the Zest Insert Color Marks. (*See, e.g.*, FAC ¶¶ 16, 22–23.)

This brings the Court to the merits of Zest's estoppel argument. Under the licensee estoppel doctrine, former licensees, such as ZimVie, "may not challenge the licensor's mark based upon facts which arose during the term of the license." *See STX*, 1997 WL 337578, at *10 (citing *Pro. Golfers Ass'n of Am. v. Bankers Life & Casualty Co.*, 514 F.2d 665, 671 (5th Cir. 1975); *Est. of Biro v. Bic Corp.*, 18 U.S.P.Q.2d 1382, 1386 (T.T.A.B. 1991)), although they "may challenge the validity of the mark if such challenge is based upon facts which arose after the license expires." *See id.* (citing *WCVB-TV v. Boston Athletic Ass'n*, 926 F.2d 42, 47 (1st Cir. 1991); *In re Houbigant*, 914 F. Supp. at 993; *Nat'l Council of Young Men's Christian Ass'ns v. Columbia Young Men's Christian Ass'n*, 8 U.S.P.Q.2d 1682, 1686 (D.S.C. 1988)). Here, ZimVie alleges that the Trademark Office refused Zest's trademark applications "for the 'standard' Inserts (blue, pink, and clear) and the 'extended range' Inserts (red, green, and orange) as they appeared packaged together in a set," (*see* FAC ¶¶ 40–41; *see also id.* ¶ 46); the Court has "observed the functionality of these Inserts," (*see id.* ¶ 60); and Zest issued the Press Release touting the LOCATOR® product suite's "well-known aesthetic features." (*See id.* ¶ 70.) Because these developments occurred after the termination of the Distribution Agreement in September 2021, (*see id.* ¶ 16), the Court cannot find as a matter of law that ZimVie is estopped from asserting its first and third counterclaims at this stage in the proceedings. *See Leadership Stud., Inc. v. Blanchard Training & Dev., Inc.*, No. 15CV1831-WQH-KSC, 2017 WL 3315652, at *6 (S.D. Cal. Aug. 2, 2017) ("The Court cannot conclude at th[e pleading] stage of the proceedings that the licensee estoppel doctrine applies as a matter of law to preclude [the defendant and counterclaimant] from challenging the validity of the trademark."). Accordingly, the Court **DENIES** Zest's Motion as to ZimVie's first and third counterclaims.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Zest's Motion to Strike and Dismiss ZimVie's First Amended Counterclaims (ECF No. 115). Specifically, the Court **GRANTS** Zest's Motion and **DISMISSES WITHOUT PREJUDICE** pursuant to Rule 12(b)(6) ZimVie's seventh counterclaim. The Court **DENIES AS MOOT** Zest's Motion as to ZimVie's abandoned ninth counterclaim, and the Court otherwise **DENIES** the remainder of Zest's Motion. Finally, the Court **GRANTS** ZimVie leave to file its second amended counterclaims <u>within two (2) weeks</u> of the electronic docketing of this Order. *Should ZimVie fail timely to file amended counterclaims, this action shall proceed solely as to ZimVie's surviving counterclaims.*

**IT IS SO ORDERED.**

Dated: April 10, 2023

_____
Honorable Todd W. Robinson
United States District Judge